**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNAFER KEMPH, DAN DEHMLOW and<br>GLENN ALLHOFF, for themselves and those similarly situated, | )<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN PAUL REDDAM, CASHCALL INC.,<br>WS FINANCIAL LLC, WS FUNDING LLC,<br>DELBERT SERVICES CORPORATION, CESAR GUZMAN,<br>SUNSHINE THAYER, GREG DALTON,<br>MELISSA DALTON, and DOES 1-10, | )<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiffs Jennafer Kemph, Dan Dehmlow and Glenn Allhoff bring this action, for themselves and others similarly situated, to secure redress relating to usurious loans made over the internet to Illinois residents by defendants.

2.     Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq*. ("RICO"), the Interest Act, 815 ILCS 205/.01 *et seq*.; the Illinois criminal usury statute, 720 ILCS 5/17-59, the Consumer Installment Loan Act, 205 ILCS 670/1 *et seq*. ("CILA"), and the Consumer Fraud Act and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("CFA").  Plaintiffs also seek declaratory and injunctive relief.

## JURISDICTION AND PARTIES

3.      This Court has jurisdiction per 28 U.S.C. §1331, 1332(d), 1337 and 1367, and 18 U.S.C. §1964.

4.      The amount in controversy exceeds $5 million on a classwide basis, exclusive of interest and costs.  Plaintiffs and the members of the class (of which there are more than 100) are citizens of Illinois.  Defendants are, on information and belief, citizens of California, Nevada and Delaware.

5.      Venue and personal jurisdiction are proper because the illegal loans were made to and collected from residents of Illinois, pursuant to advertising directed into the state of Illinois, and pursuant to the nationwide service of process provisions of RICO (18 U.S.C. §1965).

## PARTIES

6.      Jennafer Kemph is a citizen of Illinois, residing in Cook County, Illinois.

7.      Dan Dehmlow is a citizen of Illinois, residing in Cook County, Illinois.

8.      Glenn Allhoff is a citizen of Illinois, residing in Kane County, Illinois.

9.      John Paul Reddam (also known as J. Paul Reddam) is a citizen of California, residing in or around Sunset Beach, California.  He may be found at 1600 South Douglas Road, Anaheim, California 92806.  He is the ultimate owner, president and chief executive officer of CashCall Inc., as well as subsidiaries including WS Financial LLC ("Financial") and WS Funding LLC ("Funding") – all of which maintain offices at that address.  Mr. Reddam is also the sole director and owner of Delbert Services Corporation ("Delbert").

10.     CashCall is a California corporation with principal offices at 1600 South Douglass Road, Anaheim, California.  Its president, sole owner, and sole member of its board of directors is

Mr. Reddam. CashCall is engaged in the business of making or arranging high-interest loans to consumers over the Internet, and also the servicing of such loans made by others (either as a purchaser, a servicer or otherwise). (Exhibit A. See Exhibit D.)

11. Financial is, on information and belief, a limited liability company organized under California law. It maintains offices at 1600 South Douglas Road, Anaheim, California 92806. It is a subsidiary of CashCall which, on information and belief, is also its sole member. Financial's president is Mr. Reddam. (Exhibit B.)

12. Funding is a limited liability company organized under Delaware law. Its registered agent and office is RL&F Service Corp., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801. It is a subsidiary of CashCall which, on information and belief, is also its sole member. The president of Funding is Mr. Reddam. (Exhibit C. See Exhibit E.)

13. CashCall, Financial and Funding purchased, and received money on account of, usurious loans made to residents of Illinois.

14. Delbert Services Corporation ("Delbert") is a Nevada corporation, with its principal place of business located at 7125 Pollock Drive, Las Vegas, Nevada 89119. Mr. Reddam is its sole director and owner. (Exhibit F.)

15. Delbert "specializes in consumer loan servicing for securitized, non- securitized, prime, non/near prime and distressed asset portfolios. Delbert Services was formed in 2008 to service a variety of consumer assets including, unsecured signature loans, credit card, automobile, boat, recreational vehicle, manufactured housing and mortgage loans both first and second trust deed." (http://www.delbertservices.com [as accessed on September 20, 2013].)

16.     Cesar Guzman is Delbert's president and chief executive officer.  He may be found at 1900 South State College Boulevard, Suite 650, Anaheim, California.  On information and belief, he is a citizen of California or Nevada.

17.     Sunshine Thayer is Delbert's secretary and vice president of operations.  She may be found at 7125 Pollock Drive, Las Vegas, Nevada 89119.   On information and belief, she is a citizen of Nevada.

18.     Greg Dalton is Delbert's director of recovery.  He may be found at 7125 Pollock Drive, Las Vegas, Nevada 89119.  On information and belief, he is a citizen of Nevada.

19.     Melissa Dalton is Delbert's director of business development.  She may be found at 7125 Pollock Drive, Las Vegas, Nevada 89119.   On information and belief, she is a citizen of Nevada.

20.     Mr. Reddam knowingly obtained money on account of usurious loans made to residents of Illinois, and attempts to collect them.  CashCall, Financial, Funding and Delbert did so at his direction, and for his ultimate benefit as owner, president, director and chief executive officer of these businesses.

21.     Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton describe themselves as Delbert's "management team."  (http://www.delbertservices.com/AboutUs.aspx [as accessed on September 20, 2013].) As such, they have authority regarding what debts Delbert collects.

22.     The Doe defendants are individuals, and business entities, who also participated in the acts complained of, but who are not yet known to plaintiffs.

4

23.     All actions by each defendant described herein, with respect to plaintiffs and other consumers, were (a) done in the course of trade and commerce, and (b) related to loans made to plaintiffs and other consumers for personal, family or household purposes.

## FACTS

24.     Defendants have been involved in a scheme, for several years, to provide illegal, high-interest loans to consumers in Illinois, and to collect illegal amounts of interest and charges on those loans.  Specifically, CashCall, Financial and Funding have arranged for loans to be made through third-parties based on Native American reservations.  While CashCall, Financial and Funding controlled and funded the entire lending process, the involvement of Native Americans in the process was used as a ruse to attempt to confer the laws and jurisdiction of the Native American tribe onto the loans, and by so doing illegally evade Illinois law.  Delbert recently has been assigned such loans for collection, notwithstanding their illegality.

### *The Webb Entities*

25.     Since at least August 2007, various South Dakota corporate entities owned by Martin "Butch" Webb (the "Webb Entities") have offered Illinois consumers high-interest loans, through their websites, and advertisements on radio and television.  (Exhibit G.)  One such entity, Western Sky Financial LLC ("Western Sky"), was featured in such advertisements, promoting a product called "The Problem Solver Loan."  (Exhibit H.)

26.     These loans were in fact funded by CashCall, Financial and Funding; further, the lending process was controlled entirely by these defendants, under the direction of Mr. Reddam.

27.     All loans made by the Webb Entities, under this scheme, were illegal under Illinois law. No Webb Entity held a license to make consumer loans from the Illinois Department of

Financial and Professional Regulation ("IDFPR"), or held a bank charter. As a result, the Webb

Entites were prohibited from making loans to Illinois consumers with an annual interest rate

exceeding nine percent, per the Interest Act. 815 ILCS 205/4(1) provides that,

> **except as otherwise provided in [815 ILCS 205/4.05], in all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon every $ 100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided….**

> **It is lawful for a state bank or a branch of an out-of-state bank… to receive or to contract to receive and collect interest and charges at any rate or rates agreed upon by the bank or branch and the borrower. It is lawful for a savings bank… or a savings association… to receive or contract to receive and collect interest and charges at any rate agreed upon by the savings bank or savings association and the borrower.**

> **It is lawful to receive or to contract to receive and collect interest and charges as authorized by this Act and as authorized by the Consumer Installment Loan Act…. or by the Payday Loan Reform Act.**

28.     Furthermore, the Webb Entities were prohibited from making loans to Illinois

consumers with an annual interest rate exceeding twenty percent, per Illinois's criminal usury

statute (720 ILCS 5/17-59), which provides that criminal usury occurs, and a Class 4 felony is

committed,

> **when, in exchange for either a loan of money or other property or forbearance from the collection of such a loan, he or she knowingly contracts for or receives from an individual, directly or indirectly, interest, discount, or other consideration at a rate greater than 20% per annum either before or after the maturity of the loan…. This Section does not apply to any loan authorized to be made by any person licensed under the Consumer Installment Loan Act or to any loan permitted by [815 ILCS 205/4, 205/4.2, 205/4a] or by any other law of this State.**

29.     All loans made by the Webb Entities, on information and belief, carried annual interest rates in excess of 100%, and thus were civilly and criminally usurious under Illinois law.

30.     The Webb Entities made no effort to refrain from making loans to Illinois residents, even though it is possible to refuse to lend to residents of a given state.

31.     On March 8, 2013, the IDFPR issued an order directing Western Sky to cease and desist from making loans to Illinois residents, on account of their violation of Illinois law.

### Agreements between defendants regarding the Webb Entities' loans

32.     CashCall, Financial, and Funding entered into contracts with Western Sky, so that (A) the entities controlled by Mr. Reddam would give funds to the Webb Entities to make high-interest loans to residents of Illinois, (B) the loans would be purportedly transferred to Financial or Funding immediately after their origination, and (C) CashCall would service or collect payments on the loans.  Under these plans, CashCall, Financial and Funding assumed virtually all responsibility for the loans made, nominally, by Western Sky.

33.     A contract between CashCall and Western Sky is attached as Exhibit A.  The contract was made in service of the business arrangement just described.

34.     Two contracts, and a promissory note, between Financial and Western Sky are attached as Exhibit B.  These agreements were made in service of the business arrangement just described.

35.     A contract between Funding and Western Sky is attached as Exhibit C.  The contract was made in service of the business arrangement just described.

7

36.     Mr. Reddam signed each agreement found in Exhibits A, B & C on behalf of Financial, Funding and CashCall.  For each, he is the designated contact for the company.  Mr. Webb signed these agreements on behalf of Western Sky.

37.     On information and belief, Mr. Reddam and Mr. Webb entered into similar agreements involving CashCall, Finanical, Funding, and Webb Entites other than Western Sky.

38.     Loans supposedly made by the Webb Entities were purportedly transferred the loans, immediately after they were made, to either Financial or Funding, according to the plans described in Exhibits A, B & C.

39.     CashCall serviced those loans, and received payments on them.

40.     At no time has CashCall, Financial or Funding ever held a bank charter, or a lending license issued by the State of Illinois.

41.     No later than August 2013, Delbert began collecting loans made to plaintiffs pursuant to the arrangement described above.

42.     Delbert had begun collecting other loans made by the Webb Entities no later than March 3, 2012 and, on information and belief, earlier.

43.     Cesar Guzman, Sunshine Thayer, Greg Dalton, and Melissa Dalton knowingly authorized and caused Delbert to enforce usurious loans against Illinois residents.

44.     Cesar Guzman represented that he "oversees day to day recovery collection operations, and responsible for establishing  collection manuals, policies, and procedures" of Delbert, per his personal LinkedIn résumé page.  According to that same profile, he was the recovery manager for CashCall between 2005 and 2010. (http://www.linkedin.com/pub/cesar-guzman/15/524/595 [accessed September 20, 2013].)

8

45. Cesar Guzman knew of the terms on which the Webb Entities made loans no later than September 21, 2012, when his affidavit to that effect was filed in *Scott v. Delbert Services Corp.*, 2:12CV871 (E.D.Wis.). On information and belief, he became aware of those terms much earlier, whether during his employment by Delbert, or during his work for CashCall.

46. Delbert has regularly collected loans purportedly owned by CashCall or related parties, over a period of several years.

47. All defendants were on notice, as a result of prior litigation, that the loans were usurious and unenforceable, and knew or recklessly disregarded such fact. The prior litigation includes *Jackson v. Payday Financial LLC et al*, 1:11CV9288 (N.D.Ill.), and actions by at least 16 state governments. Orders relating to actions taken by the States of Illinois, New Hampshire, Colorado, Kansas and Washington (which are representative of actions taken by other states) are attached as Exhibit I.

### *The plaintiffs' loans*

48. On or about May 1, 2012, Ms. Kemph borrowed $1,000 (to be used for personal, family or household purposes), at over 100% interest from Western Sky, in response to advertising it directed to Illinois residents.

49. A few days after obtaining the loan, Ms. Kemph was notified by CashCall that the loan had been purportedly sold to Funding, and that she was to make payments to CashCall. (Exhibit J.)

50. Ms. Kemph in fact made payments on the loan.

51. On or about August 27, 2013, Ms. Kemph was instructed to make payments to Delbert. (Exhibit K.)

9

52.     In early 2012, Mr. Dehmlow borrowed $2,500 (to be used for personal, family or household purposes) at over 100% interest from Western Sky, in response to advertising it directed to Illinois residents.

53.     On information and belief, the loan was purportedly sold to Funding or Financial.

54.     Mr. Dehmlow was directed to, and did in fact, make payments to CashCall.

55.     In August 2013, Mr. Dehmlow was notified by Delbert to make payments to it. (Exhibit L.)

56.     In March 2013, Mr. Allhoff borrowed $5,075 (to be used for personal, family or household purposes) at over 100% interest from Western Sky, in response to advertising it directed to Illinois residents.

57.     On information and belief, the loan obtained by Mr. Allhoff was purportedly sold to Funding or Financial.

58.     Plaintiff Allhoff was directed to, and did in fact, make payments to CashCall, per letters CashCall sent to him.  (Exhibit M.)

59.     CashCall, Financial, Funding and Delbert also purportedly sold, or received for collection, the loans made by Webb Entities to other Illinois consumers.

## COUNT I – INTEREST ACT

60.     Plaintiffs incorporate paragraphs 1-59, and bring this claim against CashCall, Finanical and Funding.

61.     CashCall, Finanical and Funding are liable for statutory damages under 815 ILCS 205/6, which provides:

(a) **If any person or corporation knowingly contracts for or receives, directly or indirectly, by any device, subterfuge or other means, unlawful interest, discount or charges for or in connection with any loan of money, the obligor may, recover by means of an action or defense an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus such reasonable attorney's fees and court costs as may be assessed by a court against the lender. The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, shall be reduced by the amount which the obligor is thus entitled to recover. Recovery by means of a defense may be had at any time after the loan is transacted. Recovery by means of an action may be had at any time after the loan is transacted and prior to the expiration of 2 years after the earlier of (1) the date of the last scheduled payment of the loan after giving effect to all renewals or extensions thereof, if any, or (2) the date on which the total amount due under the terms of the loan contract is fully paid. A bona fide error in connection with a loan shall not be a violation under this section if the lender corrects the error within a reasonable time.**

(b) **No person shall be liable under this Act for any act done or omitted in good faith in conformity with any rule, regulation, interpretation, or opinion issued by the Commissioner of Banks and Real Estate or the Department of Financial Institutions or any other department or agency of the State, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.**

### CLASS ALLEGATIONS

62. Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(b)(3).

63. The class consists of all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb Entities made (or from whom they collected) a loan, at more than 9% interest, which loan is (or was) purportedly owned by Financial or Funding, and is either presently outstanding, or was outstanding at any time on or after two years prior to the filing of this action.

11

64.     The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 100 individuals within the class.

65.     There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members.  The predominant common question is whether defendants made and collected loans that violated the Interest Act.

66.     Plaintiffs' claim is typical of the claims of the class members, as it is based on the same facts and legal theories.

67.     Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

68.     A class action is superior to other claim resolution methods, because individual actions are not economically feasible, and because members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class, and against CashCall, Financial and Funding, for

    (a)  statutory damages;

    (b)  attorney's fees, litigation expenses and costs of suit; and

    (c)  such further relief as the Court deems proper.

## COUNT II – CILA

69.     Plaintiffs incorporate paragraphs 1-59, and bring this claim against CashCall, Financial, Funding and Delbert.

70.     All  loans to Illinois residents, by the Webb Entities, are unenforceable and void.

71.     205 ILCS 670/20(d) provides that "if any person who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."  It is declaratory of prior law making transactions that violate the criminal law of Illinois null and void.

72.     The Webb Entities did not hold licenses under CILA to make loans in Illinois, and were not excused by any other part of Illinois law from holding such licenses.

73.     As successors to those loans, Financial, Funding and Delbert are charged with responsibility for attempts to collect on void and unenforceable loans.

### CLASS ALLEGATIONS

74.      Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(b)(3).

75.     The class consists of all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb Entities made (or from whom they collected) a loan, at more than 9% interest, which loan is (or was) purportedly owned, or collected, by Financial, Funding or Delbert, and is presently outstanding, or was outstanding at any time on or after two years prior to the filing of this action.

76.     The class is so numerous that joinder of all members is not practicable.  On information and belief, there are at least 100 individuals within  the class.

77.     There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members.  The predominant common question is whether the loans at issue are unenforceable.

78.     Plaintiffs' claim is typical of the claims of the class members, as it is based on the same facts and legal theories.

79.     Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

80.     A class action is superior to other claim resolution methods, as individual actions are not economically feasible, and because members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class, and against Financial, Funding and Delbert,

(a)     declaring the loans at issue to be unlawful and enjoining their enforcement;

(b)     requiring restitution of all amounts paid or collected;

(c)     requiring defendants to remove, without delay, all reports or references they have made to credit reporting agencies regarding the loans that were made;

(d)     awarding attorney's fees, litigation expenses and costs of suit; and

(e)     providing such further relief as the Court deems proper.

## COUNT III – CFA

81.     Plaintiffs incorporate paragraphs 1-59, and bring this claim against all defendants.

82.     Defendants, in the course of trade and commerce, engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, (a) by contracting for and collecting finance charges, interest and fees from Illinois consumers in excess of the amounts permitted by Illinois

law, and (b) by falsely representing that the loans, and the charges imposed by them, were lawful and enforceable when they were not.

83.     Defendants intended to have Illinois consumers rely upon their conduct, and their representations, as described herein. Defendants' conduct offended the public policy of Illinois, in that it violated licensure requirements set forth in state law, which were put in place for the purpose of protecting consumers from misconduct, such as that engaged in by defendants here. Defendants' purpose was to charge interest beyond the limits set by Illinois law.  Such statutory limits were put in place in order to protect Illinois consumers; defendants' conduct frustrated that public policy.

84.     Defendants' conduct was unscrupulous, unethical and oppressive, in that defendants knew (or had reason to know) of licensing requirements, on account of prior suits brought against them or affiliated companies in the recent past, and failed to comply with those requirements anyway.

85.     Defendants' conduct caused substantial damage to plaintiffs and members of the class, both in terms of the money illegally taken from them and the stress and anxiety caused by defendants' illegal attempts to collect on loans carrying abusive terms.

## CLASS ALLEGATIONS

86.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(b)(3).

87.     The class consists of all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb Entities made (or from whom they collected) a loan, at more than 9% interest, which loan is (or was) purportedly owned or collected by Financial,

Funding or Delbert, and is presently outstanding, or was outstanding at any time on or after three years prior to the filing of this action.

88.     The class is so numerous that joinder of all members is not practicable.  On information and belief, there are at least 100 individuals within the class.

89.     There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members.  The predominant common question is whether the loans at issue are unlawful.

90.     Plaintiffs' claim is typical of the claims of the class members, as they are based on the same facts and legal theories.

91.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and class action cases.

92.     A class action is superior to other claim resolution methods, as individual actions are not economically feasible, and because members of the class are likely to be unaware of their rights.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and the class, and against defendants,

> (a)     declaring that all loans made to plaintiffs and the class members are unenforceable;
>
> (b)     awarding damages equal to all amounts collected from plaintiffs and the class members or, alternatively, damages equal to all excess  finance charges collected;
>
> (c)     awarding punitive damages;

16

(d)      enjoining defendants from further lending to or collection of loans from

Illinois residents;

(e)      requiring defendants to remove, without delay, all reports or references

they have made to credit reporting agencies regarding the loans that were

made;

(f)      awarding attorney's fees, litigation expenses and costs of suit; and

(g)      providing such further relief as the Court deems proper.

## <u>COUNT IV – RICO</u>

93.      Plaintiffs incorporate paragraphs 1-59, and bring this claim against Mr. Reddam,

Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton.

94.      Cashcall, Financial, Funding, and Delbert are each an "enterprise" as defined in

RICO, being a duly chartered corporations or and limited liability companies, which affect

interstate commerce by their operations.

95.      Mr. Reddam is a "person" associated with CashCall, Financial, Funding and

Delbert, under RICO.

96.      Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton are "persons" associated

with Delbert, under RICO.

97.      Each of the loans at issue in this case is an "unlawful debt" as defined in 18 U.S.C.

§1961(6), in that it is unenforceable in whole or in part because of state law relating to usury, and

was made at more than twice the lawful rate (which in Illinois is 9%) by a person (a Webb Entity,

CashCall, Financial or Funding) engaged in the business of lending money at such usurious rates.

17

98.     Mr. Reddam directed and authorized the making and collection of such unlawful debts, thereby conducting the affairs of CashCall, Financial, Funding and Delbert, through the collection of unlawful debt, in violation of 18 U.S.C. §1962(c).

99.     Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton directed and authorized the collection of such unlawful debts, thereby conducting the affairs of Delbert through the collection of unlawful debt, in violation of 18 U.S.C. §1962(c).

100.     Mr. Reddam agreed and conspired with the Webb entities (Exhibits A, B & C) to conduct the affairs of CashCall, Financial and Funding through the collection of unlawful debt, in violation of 18 U.S.C. §1962(d).

101.     Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton agreed and conspired with Mr. Reddam, and the companies he controlled, to conduct the affairs of Delbert through the collection of unlawful debt, in violation of 18 U.S.C. §1962(d), when they authorized and permitted Delbert to undertake collection of the loans at issue, no later than August 2013.

102.     Mr. Reddam, Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton  damaged plaintiffs, and Illinois consumers similarly situated, by this misconduct.

## CLASS ALLEGATIONS

103.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(b)(3).

104.     The class consists of all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb Entities made (or from whom they collected) a loan, at more than 18% interest, which loan is (or was) purportedly owned or collected by Finanical, Funding or Delbert, and is presently outstanding, or was outstanding at any time on or after three years prior to the filing of this action.

18

105.    The class is so numerous that joinder of all members is not practicable.  On information and belief, there are at least 100 individuals within the class.

106.    There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members.  The predominant common question is whether the "persons" named above individually, or jointly, conducted the affairs of the "enterprises" named above through the collection of unlawful debt.

107.    Plaintiffs' claim is typical of the claims of the class members, as it is based on the same factual and legal theories.

108.    Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and class action cases.

109.    A class action is superior to other claim resolution methods, as individual actions are not economically feasible, and because members of the class are likely to be unaware of their rights.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and the class and against Mr. Reddam, Mr. Guzman, Ms. Thayer, Mr. Dalton and Ms. Dalton, for:

    (a)      three times the finance charges in excess of 18% interest on loans that were collected;

    (b)      attorney's fees, litigation expenses and costs of suit; and

(c)    such further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a Court awards.   All rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman