## Agreement for Service

THIS AGREEMENT FOR SERVICE ("Agreement") dated this 9th day of _January_, 2010, by and between Western Sky Financial, LLC, of P.O. Box 370, Timber Lake, SD, 57656 ("Western Sky Financial"), and CashCall, Inc, of 1600 S. Douglass Road, Anaheim, CA 92806 ("SERVICE PROVIDER")

**BACKGROUND:**

1. Western Sky Financial is of the opinion that the Service Provider has the necessary qualifications, experience and abilities to provide services to Western Sky Financial.

2. SERVICE PROVIDER is agreeable to providing such services to Western Sky Financial on the terms and conditions as set out in this Agreement.

3. In furtherance of their agreement and pursuant to this Call Center Agreement for Service, Western Sky Financial hereby grants to SERVICE PROVIDER a non-exclusive license, to reproduce the name, trade name, trademarks and logos of Western Sky Financial (collectively, "Western Sky Financial Properties") during the term of this Agreement in connection with the Agreement on letters, print advertisements, the Internet, television and radio communications and other advertising and promotional materials (all such letters, advertising and promotional materials incorporating Western Sky Financial Properties and all related designs, artwork logos, slogans, copy and other similar materials shall be referred to collectively herein as the "Promotional Materials"); *provided, however,* SERVICE PROVIDER shall submit all Promotional Materials to Western Sky Financial for its written approval prior to any use thereof and Western Sky Financial shall not unreasonably withhold such approval. All rights not expressly granted to SERVICE PROVIDER herein are reserved by Western Sky Financial. Regardless of whether they incorporate Western Sky Financial Properties, advertising and promotional materials for the Loans (A) shall prominently identify Western Sky Financial as maker of the Loans, (B) shall be accurate, ( C) shall not be misleading, (D) shall comply with all applicable Cheyenne River Sioux Tribal Laws, and (E) shall be submitted to Western Sky Financial for prior approval, which shall not be unreasonably withheld or delayed; *provided, however,* that Western Sky Financial's approval shall not constitute any representation or warranty that the advertising and promotional materials are: accurate, not misleading or comply with all applicable laws.

4. In connection with SERVICE PROVIDER's performance of its obligations under this Agreement, it is expressly agreed that (A) Western Sky Financial shall not hold any ownership in SERVICE PROVIDER or possess a leasehold interest in SERVICE PROVIDER's offices or any personal property located therein, except that Western Sky Financial shall be the exclusive owner of all Notes and Loan



EXHIBIT

A

Documents as may be stored in SERVICE PROVIDER's computer servers and/or files from time to time, (B) no Western Sky Financial employees shall work in the SERVICE PROVIDER offices (except for Western Sky Financial auditors who may examine SERVICE PROVIDER's practices from time to time for compliance with Western Sky Financial Policies),and ( C) other than as may be necessary to effectuate Section 2 of this Agreement. Western Sky Financial shall exercise no authority or control over SERVICE PROVIDER's employees or methods of operation. Neither SERVICE PROVIDER nor any of its employees, officers, directors, representatives or agents will hold themselves out as an agent or employee of Western Sky Financial.

IN CONSIDERATION OF the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

1.    **Services Provided**

Western Sky Financial hereby agrees to engage SERVICE PROVIDER to provide Western Sky Financial with services as follows:

A.    Inbound/Outbound Customer Service Support, but not limited to underwriting requirements review, Customer service support, marketing services, lead purchase, suppression review, and web site hosting and support, pursuant to Western Sky Financial's practices, policies and procedures established by Western Sky Financial and communicated in writing to the SERVICE PROVIDER from time to time with respect to the services provided by SERVICE PROVIDER,

B.    Customer Services within rules and regulations contained in applicable laws and regulations.

C.    Assignment of a toll free phone and fax number.

D.    Electronic communications such as email and text correspondence with Customers.

E.    SERVICE PROVIDER will provide reporting and maintenance. Monthly reporting will begin immediately for all Customers 30 days past due.

F.    Mailings: This covers postage and materials associated with mailings, and monthly analytics / loan portfolio review data.

G.    SERVICE PROVIDER will comply, as determined by Western Sky Financial in Western Sky Financial'S sole and absolute discretion, with the loan underwriting system as administered by Western Sky Financial.

H.  SERVICE PROVIDER shall inform Western Sky Financial within one business day after the discovery of any material breach in the security resulting in unauthorized intrusions that may materially affect Western Sky Financial or its customers.

I.  SERVICE PROVIDER shall track and notify Western Sky Financial of any complaints it receives from customers and the complaint resolution.

J.  SERVICE PROVIDER shall comply with all Western Sky Financial requests for audits and on-site inspections necessary for due diligence, which may be requested by Western Sky Financial from time to time, including third party audits, at SERVICE PROVIDER expense.

and such other services as Western Sky Financial and SERVICE PROVIDER may agree upon from time to time (the "Services"), and the Service Provider hereby agrees to provide such services to the Western Sky Financial. In addition, SERVICE PROVIDER may employ the services of third party contractors to perform any of the above referenced services or all above referenced services. however, such third party contractor services shall be subject to prior written approval of Western Sky Financial.

2.  **Term of Agreement**

A.  The term of this Agreement will begin on the date of this Agreement and will remain in full force and effect for 12 months from the date of the Agreement with one year auto renewals, subject to earlier termination as provided in this Agreement, with the said term being capable of extension by mutual written agreement of the parties.

B.  In the event that Western Sky Financial wishes to terminate this Agreement at a date before the term has expired, it will be required to provide a notice period of Thirty (30) days.

C.  The obligations of SERVICE PROVIDER under this Agreement will terminate upon the earlier of SERVICE PROVIDER ceasing to be engaged by the Western Sky Financial or the termination of this Agreement by Western Sky Financial or SERVICE PROVIDER.

3.  **Performance**

The parties agree to do everything necessary to ensure that the terms of this Agreement take effect.

4.  **Compensation**

A.  For the services rendered by SERVICE PROVIDER as required by this

Agreement, Western Sky Financial will pay to SERVICE PROVIDER compensation in the amount of Two Point Zero Two Percent (2.02%) of the face value of each per approved and executed loan transaction and renewals plus an additional charges as may be documented in this Agreement. A review of the portfolio will be conducted at a minimum of every 6 months to determine if any adjustments to pricing and services are required, or more frequently as required by Western Sky Financial. Any such adjustments must be agreed to in writing by the parties and added to this Agreement.

B.  This compensation will be payable on a weekly basis, while this Agreement is in force. Invoices are generated on the next Tuesday following the billing week and are due by Friday of such billing week.

C.  Western Sky Financial is entitled to deduct from SERVICE PROVIDER'S compensation any applicable deductions and remittances as required by law.

D.  SERVICE PROVIDER shall reimburse Western Sky Financial for all costs billed to Western Sky Financial or California Company Ventures, associated with subcontracts and/or third party services upon presentation of invoice.

**5.  Additional Compensation**

In the event that the parties agree that additional compensation may be applicable based upon additional services contracted, such compensation shall be pursuant to written agreement between the parties.

**6.  Provision of Extras**

The set up fee is hereby waived by SERVICE PROVIDER.

**7.  Confidentiality**

A.  SERVICE PROVIDER agrees that they will not disclose, divulge, reveal, report or use, for any purpose, any confidential information with respect to the business of the Western Sky Financial, which SERVICE PROVIDER has obtained, except as may be necessary or desirable to further the business interests of the Western Sky Financial. This obligation will survive indefinitely upon termination of this Agreement.

B.  Western Sky Financial is aware that SERVICE PROVIDER may at its discretion be contracting with third parties for Western Sky Financial data verification and software services, as such said use of these services by SERVICE PROVIDER and the information obtained in providing these services to the Western Sky Financial is confidential information except as may be necessary or desirable to further the business interests of Western Sky Financial, as determined in the sole

discretion of Western Sky Financial. All such subcontracts must be approved by Western Sky Financial in writing and in advance. All such subcontracts shall be in compliance with Western Sky Financial Policies and Standards, pursuant to the policies and standards adopted by Western Sky Financial. Third party and/or subcontract compliance with Western Sky Financial's Policies and Standards shall be subject to periodic review of Western Sky Financial, and such compliance shall be determined in the sole discretion of Western Sky Financial. This obligation will survive indefinitely upon termination of this agreement.

**8.    Non-Competition**

SERVICE PROVIDER will not, during the continuance of this Agreement or within One (1) Year after the termination of this Agreement, be directly or indirectly involved with a business which is in direct competition with the particular Tribal Lending business model of Western Sky Financial, nor will SERVICE PROVIDER divert or attempt to divert from Western Sky Financial any business Western Sky Financial has enjoyed, solicited, or attempted to solicit, from other individuals or corporations, prior to termination of this Agreement.

**9.    Non-Solicitation**

A.    Any attempt on the part of SERVICE PROVIDER to induce any person to leave the Western Sky Financial's employ, or any effort by SERVICE PROVIDER to interfere with the Western Sky Financial's relationship with its employees or other service providers would be harmful and damaging to the Western Sky Financial.

B.    SERVICE PROVIDER agrees that during the term of this Agreement and for a period of one (1) year after the termination of the Agreement, SERVICE PROVIDER will not in any way directly or indirectly:

   i.    induce or attempt to induce any employee or other service provider of Western Sky Financial to quit employment or retainer with Western Sky Financial;

   ii.    interfere with or disrupt Western Sky Financial's relationship with its employees or other service providers;

   iii.    discuss employment opportunities or provide information about competitive employment to any of the Western Sky Financial's employees or other service providers; or

   iv.    solicit, entice, or hire away any employee or other service provider of the Western Sky Financial.

10. Ownership of Materials

All materials developed, produced, or in the process of being so under this Agreement, will be the property of SERVICE PROVIDER. The use of the mentioned materials by Western Sky Financial will not be restricted in any manner.

11. Return of Property

Upon the expiration or termination of this Agreement, SERVICE PROVIDER will return to Western Sky Financial any property, documentation, records, or confidential information which is the property of Western Sky Financial, and Western Sky Financial will return to SERVICE PROVIDER any property, documentation, records, or confidential information which is the property of SERVICE PROVIDER.

12. Assignment

SERVICE PROVIDER will not voluntarily or by operation of law assign or otherwise transfer its obligations under this Agreement without the prior written consent of Western Sky Financial.

13. Capacity/Independent Contractor

It is expressly agreed that SERVICE PROVIDER is acting as an independent contractor and not as an employee in providing the Services under this Agreement. SERVICE PROVIDER and Western Sky Financial acknowledge that this Agreement does not create a partnership or joint venture between them, and is exclusively a contract for service.

14. Modification of Agreement

Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

15. Notice

All notices, requests, demands or other communications required or permitted by the terms of this Agreement will be given in writing and delivered to the parties of this Agreement.

16. Costs and Legal Expenses

In the event that legal action is brought to enforce or interpret any term of this Agreement, each party shall be responsible for its own legal costs and fees associated with the action.

17. Time is of the essence in this Agreement.

No extension or variation of this Agreement will operate as a waiver of this provision.

**18.    Entire Agreement**

It is agreed that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement.

**19.    Limitation of Liability**

It is understood and agreed that absent willful or negligent acts, SERVICE PROVIDER will have no liability to the Western Sky Financial or any other party for any loss or damage (whether direct, indirect, or consequential) which may arise from the provision of the Services.

**20.    Enurement**

This Agreement will enure to the benefit of and be binding on the parties and their respective heirs, executors, administrators, successors and permitted assigns.

**21.    Currency**

Except as otherwise provided in this Agreement, all monetary amounts referred to in this Agreement are in United States Dollars.

**22.    Titles/Headings**

Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement.

**23.    Gender**

Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

**24.    Governing Law**

It is the intention of the parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the Cheyenne River Sioux Tribe, without regard to the jurisdiction in which any action or special proceeding may be instituted.

**26.    Dispute Resolution**

      A.     In the event a dispute arises out of or in connection with this Agreement the parties will attempt to resolve the dispute through friendly consultation.

B. If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the Cheyenne River Sioux Tribe. The arbitrator's award will be final, and judgment may be entered upon it by the Cheyenne River Sioux Tribal Court.

27. Severability

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, all other provisions will nevertheless continue to be valid and enforceable with the invalid or unenforceable parts severed from the remainder of this Agreement.

28. Waiver

The waiver by either party of a breach, default, delay or omission of any of the provisions of this Agreement by the other party will not be construed as a waiver of any subsequent breach of the same or other provisions.

IN WITNESS WHEREOF the parties have duly executed this Service Agreement this _9th_ day of _January_ ____, 2010.

(Corp Seal)

CashCall, Inc.

By: _____

J. Paul Reddam, President

STATE OF CALIFORNIA )
                     ) SS
COUNTY OF _____ )

On this the ____ day of _____, 200__, before me, _____, the undersigned officer, personally appeared J. Paul Reddam, who acknowledged himself to be the President of CashCall, Inc., a California Corporation, and that he, as such member manager being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as _____.

CHIARA A. SHALLAHAMER
Commission # _____
Notary Public - California
Orange County
My Comm. Expires Oct 18, 2011

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

(SEAL)
My Commission Expires: _____

Western Sky Financial, LLC

(Corp Seal)

By: _Butch Webb_

Butch Webb, Member

STATE OF SOUTH DAKOTA )
                           ) SS
COUNTY OF _Alloway_        )

On this the 9th day of _January_, 2010, before me, _Patty L. Stocker_, the undersigned officer, personally appeared Butch Webb, who acknowledged himself to be the Sole Member of Western Sky Financial, LLC, a South Dakota limited liability company, and that he, as such Sole Member being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as Sole Member.

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

(SEAL)
My Commission Expires: 07/29/2012

(remainder of page intentionally left blank)

Page 9 of 9