STATE OF ILLINOIS
DEPARTMENT OF FINANCIAL & PROFESSIONAL REGULATION
DIVISION OF FINANCIAL INSTITUTIONS

In the Matter of )
   Western Sky Financial, LLC ) No. 13 CC 265
)

To: Western Sky Funding Group, Ltd.
612 E Street
Timber Lake, SD 57656

### CEASE AND DESIST ORDER

The DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, DIVISION OF FINANCIAL INSTITUTIONS ("Department"), having conducted an examination of facts related to activities performed by Western Sky Financial, LLC ("Western Sky"), pursuant to the Payday Loan Reform Act, 815 ILCS 122/1 et seq., and the Consumer Installment Loan Act, 205 ILCS 670/1 et seq., hereby issues this order:

### STATUTORY PROVISIONS

#### A. Payday Loan Reform Act ("PLRA")

1. Section 1-15(a) of PLRA states, in pertinent part:

   [T]his Act applies to any lender that offers or makes a payday loan to a consumer in Illinois. 815 ILCS 122/§1-15(a).

2. Section 1-10 of PLRA states, in pertinent part:

   "Lender" and "licensee" mean any person or entity, including any affiliate or subsidiary of a lender or licensee, that offers or makes a payday loan, buys a whole or partial interest in a payday loan, arranges a payday loan for a third party, or acts as an agent for a third party in making a payday loan, regardless of whether approval, acceptance, or ratification by the third party is necessary to create a legal obligation for the third party, and includes any other person or entity if the Department determines that the person or entity is engaged in a transaction that is in substance a disguised payday loan or a subterfuge for the purpose of avoiding this Act. 815 ILCS 122/§1-10.

3. Section 3-3(a) of PLRA states, in pertinent part:

   [A] person or entity acting as a payday lender must be licensed by the Department as provided in this Article. 815 ILCS 122/§3-3(a).

4. Section 4-10(e) of PLRA states, in pertinent part:



1

> The Secretary [of the Department] may issue a cease and desist order to any licensee or other person doing business without the required license, when in the opinion of the Secretary the licensee or other person is violating or is about to violate any provision of this Act or any rule or requirement imposed in writing by the Department as a condition of granting any authorization permitted by this Act. 815 ILCS 122/§4-10(e).

### B. Consumer Installment Loan Act ("CILA")

5. Section 1 of CILA states, in pertinent part:

> License required to engage in business. No person, partnership, association, limited liability company, or corporation shall engage in the business of making loans of money in a principal amount not exceeding $40,000, and charge, contract for, or receive on any such loan a greater rate of interest, discount, or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder, except as authorized by this Act after first obtaining a license from the Director of Financial Institutions (hereinafter called the Director). 205 ILCS 670/§1.

6. Section 20.5(a) of CILA states, in pertinent part:

> The Director may issue a cease and desist order to any licensee, or other person doing business without the required license, when in the opinion of the Director, the licensee, or other person, is violating or is about to violate any provision of this Act or any rule or requirement imposed in writing by the Department as a condition of granting any authorization permitted by this Act. 205 ILCS 670/§20.5(a).

7. Section 20.5(b) of CILA states, in pertinent part:

> The Director may issue a cease and desist order prior to a hearing. 205 ILCS 670/§20.5(b).

8. Section 20.5(h) of CILA states, in pertinent part:

> The powers vested in the Director by this Section are additional to any and all other powers and remedies vested in the Director by law, and nothing in this Section shall be construed as requiring that the Director shall employ the power conferred in this Section instead of or as a condition precedent to the exercise of any other power or remedy vested in the Director. 205 ILCS 670/§20.5(h).

### FACTUAL FINDINGS

9. On or about March 6, 2013, Western Sky sent an email communication to an Illinois consumer soliciting an application for a PLRA or CILA loan.

10. On or before March 2013, Western Sky solicited applications for PLRA and CILA loans from Illinois consumers through its website, www.westernsky.com.

11. On or before March 2013, Western Sky advertised PLRA and CILA loans to Illinois consumers on multiple television networks.

12. On or before March 2013, Western Sky was engaged in the business of offering, making, or arranging PLRA loans to Illinois consumers.

13. On or before March 2013, Western Sky was engaged in the business of offering, making, or arranging CILA loans to Illinois consumers.

14. Western Sky has never been licensed by the Department to offer, make, or arrange PLRA loans to Illinois consumers.

15. Western Sky has never been licensed by the Department to offer, make, or arrange CILA loans to Illinois consumers.

### LEGAL FINDINGS

16. Western Sky violated Section 3.3 of the Payday Loan Reform Act by offering, making, or arranging PLRA loans to Illinois consumers without first applying for, and obtaining the required license from the Department.

17. Western Sky violated Section 1 of the Consumer Installment Loan Act by offering, making, or arranging CILA loans to Illinois consumers without first applying for, and obtaining the required license from the Department.

**NOW IT IS HEREBY ORDERED:**

I. Pursuant to Section 4-10(e) of the Payday Loan Reform Act, Western Sky shall immediately **CEASE AND DESIST** offering, making, or arranging PLRA loans to consumers in Illinois.

II. Pursuant to Section 20.5 of the Consumer Installment Loan Act, Western Sky shall immediately **CEASE AND DESIST** offering, making, or arranging CILA loans to consumers in Illinois.

III. Western Sky is ordered to **PRODUCE DOCUMENTS** to the Department consisting of any and all records, files, account statements, communications, and documents containing information relevant to the accounts of all active and inactive Illinois consumers. Western Sky shall provide copies of all print and electronic advertising, mailings, fliers, email communications, website pages, and any other type of solicitation or advertisement that Western Sky is using or has used to solicit consumers in Illinois. All documents requested pursuant to this paragraph shall be produced by **March 29, 2013**, and delivered to the Consumer Credit Supervisor at the Illinois Department of Financial and Professional

Regulation, Division of Financial Institutions, 100 W. Randolph Street, 9th Floor, Chicago, IL 60601.

Pursuant to Section 4-10(e) of PLRA and Section 20.5(c) of CILA, notice shall be made either personally or by certified mail. Service by certified mail shall be deemed completed when the notice is deposited in the U.S. mail. Western Sky may request, in writing, a hearing on the Order within 15 days after the date of service.

Dated this 8th day of March 2013

_____
Roxanne Nava, Director
Division of Financial Institutions

STATE OF NEW HAMPSHIRE                    BANKING DEPARTMENT

In re CashCall, Inc.,
John Paul Reddam, President and CEO of CashCall, Inc.,
and WS Funding, LLC.

Case No. 12-308

### ORDER TO CEASE AND DESIST

Now comes the State of New Hampshire Banking Department (the "Department"), commencing an adjudicative proceeding under the provisions of RSA Chapter 399-A and RSA Chapter 541-A against the respondents, CashCall, Inc. ("CashCall"), John Paul Reddam, President and CEO of CashCall, and WS Funding, LLC ("WS Funding").

### JURISDICTION

Under RSA Chapter 399-A, the Department licenses and regulates persons "engage[d] in the business of making small loans, title loans, or payday loans in this state or with consumers located in this state . . . ." RSA 399-A:2, I. The Department "may issue a cease and desist order against any licensee or person who it has reasonable cause to believe has violated . . . the provisions of [RSA Chapter 399-A] or any rule or order under [RSA Chapter 399-A]." RSA 399-A:8, I. Additionally, the Bank Commissioner has exclusive jurisdiction to investigate charges and fees associated with payday and small loans that may constitute an unfair or deceptive act under RSA Chapter 358-A. RSA 399-A:12, VIII. The Bank Commissioner may also "by order, upon due notice and opportunity for a hearing, assess penalties [for violating RSA Chapter 399-A] . . . if it is in the public interest." RSA 399-A:7, I(i).

### RESPONDENTS

1. CashCall is located at 1600 South Douglass Road, Anaheim, CA 92806. CashCall is licensed by the Department as a mortgage banker under RSA Chapter 397-A. CashCall does not hold any other license from the Department.

2. John Paul Reddam is the President and CEO of CashCall. Mr. Reddam owns 100% of CashCall's corporate stock. Mr. Reddam has a mailing address of 1600 S. Douglass Road, Anaheim, CA 92806. Mr. Reddam is not licensed as a small loan lender with the Department.

3. WS Funding is a wholly-owned subsidiary of CashCall according to documents obtained from CashCall. It is unclear where WS Funding is located or incorporated. The Department does not have a mailing address for WS Funding. WS Funding is not licensed with the Department.

### FACTS

On or about February 21, 2012, the Department commenced a routine examination of CashCall pursuant to RSA 397-A:12. During the course of the examination, the examiner discovered that CashCall appeared to be engaged in the business of purchasing and servicing small loans and/or payday loans in association with Western Sky Financial, LLC ("Western Sky"). Western Sky is wholly owned by an individual tribal member of the Cheyenne River Sioux Tribe and operates within the exterior boundaries of the Cheyenne River Sioux Reservation, a sovereign nation, located in South Dakota. See Western Sky Home page, http://www.westernsky.com.

The Department sent a letter to CashCall outlining the Department's findings from the examination and issued an administrative subpoena *duces tecum* to CashCall seeking a variety of

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 2 of 10

documents related to CashCall's relationship with Western Sky. CashCall complied with the administrative subpoena and produced the requested documents.

Upon review of those documents, the Department concluded that CashCall and Western Sky operate as follows. Consumers apply for small loans or payday loans through a call center, CashCall's website, or www.westernsky.com.[1] Pursuant to an agreement between Western Sky and WS Funding, CashCall provides website hosting and support services for Western Sky. Additionally, CashCall reimburses Western Sky for all costs of maintenance, repair and/or update costs associated with Western Sky's server. CashCall also reimburses Western Sky for its office, personnel, and postage and provides Western Sky with a toll free telephone and fax number. CashCall also provides an array of marketing services to Western Sky, including but not limited to creating and distributing print, internet, television, and radio advertisements and other promotional materials.

Once a consumer application for a small or payday loan is received via the call center, CashCall's website, or www.westernsky.com, CashCall reviews the application for underwriting requirements. When an application is approved, Western Sky executes a promissory note and debits a so-called "Reserve Account" to fund the promissory note. The Reserve Account is a demand-deposit bank account set up in the name of Western Sky which carries a balance equal to the full value of two days promissory notes calculated on the previous month's daily average. Under an agreement between Western Sky and WS Funding, CashCall is required to set up, fund, and maintain the balance in the Reserve Account. The initial balance in the Reserve Account must be $100,000.

---

[1] A "WHOIS" search on www.godaddy.com demonstrates that www.westernsky.com is registered to Butch Webb, Payday Financial, LLC, Timber Lake, South Dakota. Butch Webb is the signatory for Western Sky Financial on the Agreement for the Assignment and Purchase of Promissory Notes" between WS Funding, LLC, a subsidiary of CashCall, and Western Sky Financial, LLC.

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 3 of 10

After a loan is funded, CashCall is obligated by agreement to purchase the promissory note from Western Sky. The agreement between WS Funding and Western Sky provides that Western Sky can debit the Reserve Account in payment for these purchased promissory notes at the end of every business day. The timeframe for when the purchase occurs is not specified in any agreement between WS Funding and Western Sky. However, consumer complaints indicate that CashCall generally makes contact with the consumer within one business day of the consumer filing an application for the small loan or payday loan. Western Sky does not accept any payment from consumers on notes made under this business scheme.

As compensation for services provided, Western Sky pays CashCall 2.02% of the face value of each approved and executed loan transaction plus any additional charges with a net minimum payment of $100,000 per month. Conversely, in consideration for the terms of the agreement setting up the Reserve Account, CashCall agrees to pay Western Sky 5.145% of the face value of each approved and executed loan credit extension and/or renewal. Additionally, CashCall pays Western Sky a minimum monthly administration fee of $10,000.

Under the terms of the agreement between WS Funding and Western Sky, CashCall agrees to indemnify Western Sky for all costs arising or resulting from any and all civil, criminal, or administrative claims or actions, including but not limited to fines, costs, assessments, and/or penalties which may arise in any jurisdiction. Additionally, CashCall is responsible for tracking all consumer complaints regarding these payday and small loans and notifying Western Sky of these complaints.

The Department has received five consumer complaints from New Hampshire residents against Western Sky and CashCall. Additionally, CashCall provided the Department with a list

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 4 of 10

of 787 New Hampshire consumers who received small loans or payday loans under the business scheme outlined above, including the five consumers who filed complaints with the Department.

The respondents have taken substantial steps to conceal this business scheme from consumers and state and federal regulators. Western Sky does not identify its relationship with CashCall or WS Funding on its website or in any marketing materials. The promissory notes identify the "lender" as Western Sky with an address of Timber Lake, South Dakota. The promissory notes state that the loan agreement is "subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation." Additionally, the Department has taken enforcement action against Western Sky in the past. E.g., In re Impact Cash, Case No. 10-011 (Order to Show Cause and Cease and Desist, Sept. 23, 2011). Western Sky sought dismissal of the action for lack of jurisdiction, citing the sovereign status of individual members of Indian Tribes under United States Supreme Court case law.

After detailed review of the respondents' business scheme, it appears that Western Sky is nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators. Western Sky holds itself out to the public as a stand alone tribal entity which provides small loans and payday loans to consumers. In reality, however, CashCall creates all advertising and marketing materials for Western Sky and reimburses Western Sky for administrative costs. CashCall reviews consumer applications for underwriting requirements. CashCall funds the loans. CashCall services the loans. Western Sky does not receive any payment from consumers for the loans.

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 5 of 10

## GOVERNING LAW

Under RSA 399-A:2, I, "[n]o person shall engage in the business of making small loans, title loans, or payday loans . . . with consumers located in [New Hampshire] without first obtaining a license from the [Bank Commissioner]." "If in the making or collection of a loan[,] the person [fails to obtain a license from the Department], the loan contract shall be void and the lender shall have no right to collect, receive, or retain any principal, interest or charges whatsoever." RSA 399-A:2, IV. The provisions of RSA Chapter 399-A "apply to any person who seeks to evade its application by any device, subterfuge, or pretense, including without limitation . . . [u]sing any agents, affiliates, or subsidiaries in an attempt to avoid the application of the provisions of [RSA Chapter 399-A]." RSA 399-A:2, VI(b).

Courts look to the substance of a transaction, rather than the formal loan documents, to identify the actual or de facto lender who makes the loan. Ubaldi v. SLM Corp., 852 F. Supp. 2d 1190, 1196 (N.D. Cal. 2012); State of West Virginia, et al. v. CashCall, Inc., et al., No. 08-C-1964, slip op. at 10-11 (Sept. 10, 2012). Specifically, courts consider, among other things, which party: (1) supplies the funds for the loans; (2) bears the risk of loss on the loans; (3) makes the underwriting decisions, i.e., the decisions to lend or not to lend to a particular applicant; (4) develops and uses forms, brands, and platforms; (5) collects the vast majority of fees and interest on loans. Ubaldi, 852 F. Supp. 2d at 1195; see RSA 399-A:2, VI(c)(indicating that New Hampshire courts should look to which entity maintains a "preponderance economic interest" in the revenues generated by the loan).

## FINDINGS

The Department has reasonable cause to believe that the substance of the transactions with New Hampshire consumers shows that CashCall, or its wholly-owned subsidiary, WS

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 6 of 10

Funding, is the actual or de facto lender for the payday or small loans. CashCall supplies funds for the loans through the Reserve Account. CashCall bears the risk of loss on the loans in that it is obligated to purchase the promissory notes from Western Sky and CashCall has agreed to indemnify Western Sky for any liability associated with the business scheme. CashCall reviews all consumer applications for underwriting requirements. CashCall provides website site hosting, server maintenance, marketing services, and administrative support services to Western Sky. Finally, CashCall receives all payments from consumers for the loans. For these reasons, the Department has reasonable cause to believe that the respondents knowingly or negligently violated RSA 399-A:2, I when they engaged in the business of making payday loans or small loans without obtaining a license from the Department.

Additionally, the Department has reasonable cause to believe that the respondents' business scheme constitutes an unfair or deceptive act or practice. See RSA 399-A:12, VIII. The respondents appear to have enacted the business scheme to cause a likelihood of confusion or misunderstanding as to the affiliation, connection, or association between CashCall, WS Funding, and Western Sky. See RSA 358-A:2, III. This business scheme prevents consumers from understanding which entity is making the loans. Moreover, the respondents apparently have used the business scheme as a shield to evade licensure from the Department by exploiting Indian Tribal Sovereign Immunity.

Pursuant to RSA 399-A:7, I, this Order is necessary and appropriate to the public interest, for the protection of consumers, and consistent with the purposes fairly intended by the policy and provisions of RSA Chapter 399-A.

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 7 of 10

## ORDER

Accordingly, the Commissioner orders as follows:

1. The respondents shall cease and desist from violating RSA Chapter 399-A and any rules or order under RSA Chapter 399-A;

2. The respondents shall disgorge any finance charges, delinquency charges, or collection charges associated with the loans made to New Hampshire consumers under the business scheme outlined above;

3. The respondents shall notify all New Hampshire consumers with loans made under the above-referenced business scheme of the disgorgement of any finance charges, delinquency charges, or collection charges associated with those loans via letter;

4. The respondents shall pay restitution to all New Hampshire consumers who received loans under the business scheme outlined above; and

5. The respondents shall be assessed an administrative fine of $1,967,500 for 787 knowing or negligent violations of RSA 399-A:2, I. RSA 399-A:7, I(i); RSA 399-A:8, I; RSA 399-A:18, II; RSA 399-A:18, V.

### NOTICE OF RIGHT TO A HEARING

The respondents have a right to request a hearing in writing on this Order to Cease and Desist. If requested, "[a] hearing shall be held not later than 10 days after the request for such hearing is received by the commissioner...." RSA 399-A:8, I.

If the respondent "fails to request a hearing within 30 calendar days of receipt of such order, then such person shall likewise be deemed in default, and the order shall, on the thirty-first day, become permanent, and shall remain in full force and effect until and unless later modified or vacated by the commissioner, for good cause shown." Id.

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 8 of 10

**RECOMMENDED by:**

June 4, 2013
Date

/s/
Emelia A.S. Galdieri
N.H. Bar #19840
Hearings Examiner
State of New Hampshire Banking Department

**ORDERED by:**

June 4, 2013
Date

/s/
Glenn A. Perlow
Bank Commissioner
State of New Hampshire Banking Department

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 9 of 10

## CERTIFICATE OF SERVICE

I, Emelia A.S. Galdieri, hereby certify that on June 5, 2013, a copy of this Order to Cease and Desist was sent to the following parties via U.S. Certified Mail First Class:

Claudia Callaway, Esq.
Katten Muchin Rosenman, LLP
2900 K Street NW, North Tower – Suite 200
Washington, DC 20007-5118

J. Paul Reddam
CashCall, Inc.
1600 S. Douglass Road
Anaheim, CA 92806

/s/
Emelia A.S. Galdieri
N.H. Bar #19840
Hearings Examiner
State of New Hampshire
Banking Department

In re CashCall, Inc., et al., Case No. 12-308
Order to Cease and Desist
Page 10 of 10