| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>City and County Building<br>1437 Bannock, Denver, CO 80202 | DATE FILED: April 15, 2013<br><br>▲ COURT USE ONLY ▲ |
|---|---|
| **Plaintiffs:** STATE OF COLORADO ex rel. JOHN W. SUTHERS, ATTORNEY GENERAL FOR THE STATE OF COLORADO, AND LAURA UDIS, ADMINISTER UNIFORM CONSUMER CREDIT CODE<br><br>v.<br><br>**Defendants:** WESTERN SKY FINANCIAL, LLC, AND MARTIN A. WEBB | Case Number: 11 CV 638<br><br>Courtroom: 259 |
| **ORDER** | |

**THIS MATTER** is before the Court on Plaintiffs the State of Colorado ex rel. John W. Suthers, Attorney General for the State of Colorado, and Laura Udis, Administer, Uniform Consumer Credit Code's (the "State") Motion for Partial Summary Judgment – Second Claim for Relief, filed December 27, 2012. Defendants Western Sky Financial, LLC ("Western Sky"), and Martin A. Webb ("Webb") (collectively "Defendants") filed their Response on January 31, 2013. The State filed its Reply on March 8, 2013. The Court has reviewed the Motion, the pleadings in support and opposition, the case file, and the relevant authority, and, being fully informed, finds and orders as follows:

## BACKGROUND

This dispute arises over allegedly illegal, usurious, and unlicensed loans, issued over the Internet, in Colorado to Colorado consumers. The State alleges that Western Sky, a South Dakota limited liability company, has conducted business, through the Internet, to make loans to Colorado consumers in amounts ranging from $400 to $2,600 with annual percentage interest

rates ("APR") of approximately 140% to 300%. Webb is the sole manager and owner of Western Sky. Further, Webb is an enrolled member of the Cheyenne River Sioux (the "Tribe") and resides on the Cheyenne River Indian Reservation (the "Reservation") in South Dakota.

In 2010, Western Sky made more than 200 such loans to Colorado consumers. Following an investigation, the State determined that Western Sky was making "unlicensed supervised loans" and imposing excessive finance charges. After Western Sky failed to comply with a demand that it cease and desist from making further loans, the State filed suit against Defendants seeking injunctive relief and damages.

## UNDISPUTED FACTS

1. Western Sky is a South Dakota company. Webb is Western Sky's sole manager, sole executive officer, and sole owner. Webb directs, controls, manages, participates in, supervises, is responsible for, and authorizes Western Sky's activities.

2. Western Sky is principally engaged in the business of making small, short-term personal loans to consumers.

3. Via the Internet and television advertising, Western sky offers and enters into loans with Colorado consumers.

4. According to its website, Western Sky offers personal loans of up to $2,600.00.

5. Also according to its website and a loan agreement with a Colorado consumer the loans have APRs from 140% to over 300%. The loan agreement with the Colorado consumer reflects a loan for $400.00 with over 330% APR. *See* Exhibits 1 and 2 to the affidavit of Jodie Robertson. (Robertson Aff, attached to the State's Motion as Exhibit 2).

6. Colorado Consumers apply for loans directly through Western Sky's Website.

7. Western Sky electronically deposits the loans' proceeds into the consumers' bank accounts.

8. Pursuant to the loan agreements, consumers authorize Western Sky to withdraw funds electronically from the consumers' bank accounts.

9. In 2010 alone, Western Sky made over 200 loans to Colorado consumers.

10. Western Sky is not, and at no relevant time was, licensed as a supervised lender in Colorado authorized to make supervised loans pursuant to Colorado's Uniform Consumer Credit Code, C.R.S. § 5-1-101, *et seq.* (the "Code").

11. In November 2010, Administrator Udis (the "Administrator") demanded that Western Sky cease making any new loans. The Administrator also demanded that Western Sky make refunds to consumers of all of its loans' improper and excess finance charges.

12. Western Sky did not comply with the Administrator's demands.

### STANDARD OF REVIEW

Summary judgment is appropriate when, based on the pleadings, no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004). The purpose of summary judgment is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense associated with trial when, as a matter of law, one party could not prevail. *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo. 1992). The nonmoving party must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts, and all doubts are resolved against the moving party. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 225-26 (Colo. 2000).

A party may move for summary judgment on an issue it would not bear the burden of proof upon at trial. *Casey v. Christie Lodge Owners Ass'n, Inc.*, 923 P.2d 365, 366 (Colo. App. 1996). In such an instance, the burden is on the moving party to establish the "nonexistence of a genuine issue of material fact." *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645,649 (Colo. 1991) (*citing Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987)). This burden may be satisfied by "demonstrating that there is an absence of evidence in the record to support the

nonmoving party's case." *Id.* "An affirmative showing of specific facts, un-contradicted by any counter affidavits, leaves a trial court with no alternative but to conclude that no genuine issue of material fact exists." *Civil Serv. Comm'n*, 812 P.2d at 649 (*citing Terrell v. Walter E. Heller & Co.*, 439 P.2d 989, 991 (Colo. 1968)).

ANALYSIS

The State requests that this Court enter summary judgment regarding Defendants' liability on its second claim for relief, "Refunds to Consumers – Code Unlicensed Lender." Specifically, the State contends that Defendants made and collected supervised loans without a supervised lender's license, in violation of § 5-2-301 the Code, and therefore, Defendants are subject to penalty under the Code.

The Code prohibits a person from making or collecting supervised loans without a supervised lender's license, providing that:

> (1) Unless a person ... has first obtained a license from the administrator authorizing him or her to make supervised loans, he or she shall not engage in the business of:
>
> (a) Making supervised loans or undertaking direct collection of payments from or enforcement of rights against consumers arising from supervised loans he or she has previously made.

Code § 5-2-301(1)(a). Where a creditor has violated the Code regarding the authority to make supervised loans contained in Code § 5-2-301:

> the consumer is not obligated to pay the finance charge and has a right to recover from the person violating this code ... a penalty in an amount to be determined by the court not in excess of three times the amount of the finance charge ....

Code § 5-5-201(1). Further, Code § 5-6-114 authorizes the State to seek these amounts on the consumers' behalves and provides that the Administrator may "bring an action against a creditor

4

for making or collecting charges in excess of those permitted by this code" and, if "an excess charge has been made, the court shall order the respondent to refund to the consumer the amount of the excess charge and to pay a penalty to the consumer as provided in [§] 5-5-201."

Code § 5-1-301(47) defines a "supervised" loan as a consumer loan with an APR in excess of 12%. In turn, a consumer loan is a loan in which: (1) the consumer is a person other than an organization; (2) the principal does not exceed $75,000; (3) a loan finance charge is made; and (4) the debt is incurred primarily for personal, family, or household purposes. *See* Code § 5-1-301(15)(a).

Here, the undisputable facts before the Court confirm that Western Sky makes and collects unlicensed supervised loans to Colorado citizens, thereby subjecting Defendants to liability under the Code.[1] However, Defendants assert that the State's Motion fails because: (1) Mr. Webb is a Native American who conducts business within the boundaries of the Reservation, and therefore, Webb and his company, Western Sky, are subject to tribal immunity and federal preemption, not subject to state jurisdiction and control; and, (2) in its Motion, the State improperly "relies heavily on the non-binding stipulation [of fact] in an unrelated federal court case [*FTC v. Payday Financial, LLC*, Case No. 11 CV 03017 (D.S.D. May 18, 2012) (the "South Dakota Case")]."

## I. Defendants' contention that the State's Motion fails because it improperly relies on the Non-Binding Stipulation in the South Dakota Case is not persuasive.

Defendants assert that the State improperly relied on the stipulation from the South Dakota Case. Specifically, Defendants maintain that the State's contentions, based on the

---

[1] While Defendants deny certain of Plaintiff's allegation with respect to Defendants making and collecting supervised loans without a license, their denials are simply not supported by the record before the Court.

stipulation, that Western Sky: (a) "makes withdrawals from the consumer's bank account'" (b) "initiates collection procedures if the consumer does not pay the loan;" and, (c) "collected illegal and unlicensed supervised loans," are clearly disputed and contradicted by the record before the Court. Therefore, Defendants assert that summary judgment is not appropriate.

However, in its Motion, the State contends that the facts are "taken principally from the Complaint's allegations that [D]efendants admit in their Answer." While the aforementioned facts, as alleged by the State derive from the stipulation in the South Dakota Case, other salient facts come from Defendants' own documents, their discovery responses, sworn affidavits, and deposition testimony. Further, as discussed in greater detail below, the disputed facts referenced above with respect to Defendants' withdrawal and collection procedures are not material to resolving the present issue before the Court – whether Defendants are liable under the Code – as there is ample undisputed evidence before the Court to establish that Defendants have engaged in unlicensed supervised loans and are not entitled to tribal immunity or federal preemption with respect to their business activities.

**II. Defendants are not entitled to Tribal Immunity or Federal Preemption.**

Turning next to Defendants' contention that they are entitled to tribal immunity because they are conducting business on the Reservation, the Court concludes that Defendants' argument is without merit. This Court addressed this very argument in its Order dated, April 17, 2012, denying Defendants' Motion to Dismiss, rejecting Defendants' assertion that the State is attempting to reach into and regulate on-reservation activity. Defendants' recycling of this same argument here is equally unpersuasive.

6

Specifically, in the April 17, 2012 Order, this Court found *State ex rel. Suthers v. Cash Advance & Preferred Cash Loans*, 205 P.3d 389 (Colo. App. 2008) ("*Cash Advance I*") instructive on this issue, where, in a near identical factual scenario to this action, the State attempted to investigate a tribal entities alleged usurious internet loan making to Colorado consumers in violation of Colorado's Consumer Credit Code and Consumer Protection Act. *Id.* at 394, *aff'd sub nom. Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099 (Colo. 2010).

In *Cash Advance I*, the Court of Appeals determined that business conducted via the internet, which is identical to the type of business conducted by Western Sky here, was sufficient to confer jurisdiction to the State and demonstrated that the business activity constituted off-reservation activity. *See Cash Advance I*, 205 P.3d at 400. Observing that violations of Colorado's Consumer Credit Code and Consumer Protection Act would have significant off-reservation effects that would require the State's intervention, the Court of Appeals held that the State had jurisdiction to "investigate, criminally prosecute, seek declaratory and injunctive relief, and pursue civil remedies for conduct occurring within its borders." *See id.* at 403.

Nevertheless, Defendants maintain that the application of the five-factor test, set forth in *Cash Advance I*, as applied to their business activities here, establish that Western Sky's lending activities occur within the boundaries of the Reservation, thereby preventing the State's enforcement efforts in accordance with tribal immunity. The Court does not agree.

In *Cash Advance I*, the Court of Appeals provided the following factors for courts to consider when determining whether lending activity took place off-reservation: (1) where the contract was entered into; (2) where the contract was negotiated; (3) where performance will

7

occur; (4) where the subject matter of the contract is located; and, (5) where the parties reside. 205 P.3d at 400. However, in *Cash Advance I* the Court of Appeals did not rely on those factors. Rather, as set forth above, the Court of Appeals employed a long-arm analysis, to conclude that "[b]usiness conducted over the Internet that would confer jurisdiction on a state court also demonstrates that the business activity constitutes off-reservation activity." *Id.* Further, an application of the *Cash Advance I* factors to the uncontroverted facts presented here leads this Court to no contrary conclusion that Defendants' lending activities occur off-reservation.

Similarly, Defendants' contention that Webb is individually protected by tribal immunity as a member of the Tribe is in vain. Again, the Court addressed this very contention in its April 17, 2012 Order, denying Defendants' Motion to Dismiss. Webb, as an enrolled member of the Tribe, is not individually entitled to immunity, nor does his membership in the Tribe confer such immunity upon Western Sky. *See Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171,72 (1977) (holding that the "doctrine of sovereign immunity ... does not immunize individual members of [a] tribe.").

Defendants also contend that the State has no regulatory authority of Webb because Webb conducts business through a legally recognized business entity, and the State has alleged no facts sufficient to pierce the corporate veil with respect to Webb. Conversely, the State maintains that Webb's individual liability is not dependent on any "piercing the corporate veil" or "alter ego" theory. Rather, the State contends that Webb's liability flows from the long and well-established principle that those responsible for corporate wrongdoing are personally liable for the corporation's wrongful acts.

8

In support of its contention, the State directs the Court to several cases from other persuasive jurisdictions. First, in *F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989), the Seventh Circuit affirmed a judgment holding individual shareholder and officer defendants liable for consumer restitution and other remedies to the same extent as their businesses. *Id.* at 566, 573-74. In doing so, the Seventh Circuit held that where the individuals participated in the businesses' unlawful acts, "or had authority to control them," the individuals were personally liable. *Id.* at 573. Similarly, in *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001), in a state regulatory action brought under the federal Telephone Consumer Protection Act, the court held the individual officers, directors, and shareholders jointly and severally liable with the defendant corporation for monetary judgment and injunctive relief. There, the federal court rejected the defendants' proposition that individual liability for corporate acts required piercing the corporate veil, holding that those who "participate in or authorize the commission of a wrongful act, even if the wrongful act is done on behalf of the corporation, ... may be personally liable ... [T]o hold otherwise would allow the individual defendants to simply dissolve the [corporation], set-up a new shell corporation, and repeat their conduct." *Id.* at 897-898.

The State provided the Court with countless other examples of courts holding individual defendants liable for a business's violations under similar circumstances without requiring that the plaintiff pierce the corporate veil. *See, e.g., U.S. v. Pollution Abatement Serv., Inc.*, 763 F.2d 16, 23-25 (2nd Cir. 7985); *McCown v. Heidler*, 527 F.2d 204 (10th Cir. 1975); *Mead v. Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968); *Wash v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 553 P.2d 423, 439 (Wash. 1979).

This principle is equally established in Colorado. In *Snowden v. Taggart*, 17 P.2d 305 (Colo. 1932) the Colorado Supreme Court held that an officer of a corporation involved with the commission of the corporation's wrongdoing is personally liable, providing:

> This principle is absolutely without exception, and is founded upon the soundest legal analogies, and the wisest public policy. To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations.

*Id.* at 307 (internal quotations omitted).

This principle was reiterated in *Sanford v. Kobey Bros. Constr. Corp.*, 689 P.2d 724 (Colo. App. 1984), where the Court of Appeals reversed a trial court's entry of judgment in favor of an individual defendant because the facts presented did not permit the plaintiffs to pierce the corporate veil. In reaching its conclusion, the Court of Appeals provided that:

> Neither the doctrine of *respondeat superior* nor the fiction of corporate existence bars imposition of individual liability for individual acts of negligence, even when the individual is acting in a representative capacity . . . Rather, a servant may be held personally liable for his individual acts . . ., as so may an officer, director, or agent of a corporation for his or her tortious acts, regardless of the fact that the master or corporation also may be vicariously liable.

*Id.* at 725-26.

Here, it is uncontroverted that Webb is the sole manager, executive director, owner, and principal of Western Sky. It is further undisputed that Webb directs, controls, manages, participates in, supervises, is responsible for, and authorizes Western Sky's activities. Finally, the record before the Court confirms that Webb has general responsibility and final decision making authority for *all* of Western Sky's business operations. Accordingly, because Webb has

10

the exclusive authority to control the actions of Western Sky, he may also be held individually liable for Western Sky's violations of the Code.

To the extent that Defendants contend that "Indian businesses operating on a reservation are not subject to state jurisdiction and control" and are thus preempted by federal law, the Court is not persuaded.

Again, this very contention was rejected by this Court in its April 17, 2012 Order denying Defendants' Motion to Dismiss. As discussed above, the record before the Court confirms that Defendants' conduct does not involve the regulation of Indian affairs on an Indian reservation. Further, as discussed in the Court's April 17, 2012 Order, the Court finds the federal court's determination in *State ex rel. Suthers v. Western Sky, LLC*, 845 F.Supp.2d 1178, 1182 (D. Colo. 2011), regarding Defendants' preemption argument particularly instructive:

> Defendants argue that Congress has completely preempted the regulation of Indian affairs on a reservation. However, even if that were so, it begs the question of whether the conduct of which [the State] complain[s] involved regulation of Indian affairs on a reservation. I find and conclude that it did not. [The State] allege[s], and defendants do not dispute, that defendants were operating via the Internet .... The borrowers do not go to the reservation in South Dakota to apply for, negotiate or enter into loans. They apply for loans in Colorado by accessing defendants' website. They repay the loans and pay the financing charges from Colorado; Western Sky is authorized to withdraw the funds electronically from their bank accounts. The impact of the allegedly excessive charges was felt in Colorado. Defendants have not denied that they were doing business in Colorado for jurisdictional purposes, nor does it appear that they could. *See* [*Cash Advance I*, 205 P.3d at 400]. "Business conducted over the Internet that would confer jurisdiction on a state court also demonstrates that the business activity constitutes off-reservation activity." [*Id.*]

11

Moreover, notwithstanding the above, it is well settled that tribes are subject to state law when engaged in off-reservation activity. *See, e.g., Nevada v. Hicks*, 533 U.S. 353 (2001); *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973); *Organized Vill. Of Kake v. Egan*, 369 U.S. 60, 62-63, 75-76 (1962).

C.R.S. § 5-1-201(1) provides that the Code "applies to consumer credit transactions made in this state." The Code further provides that a consumer credit transaction is made in this state if

> (b) A consumer who is a resident of this state enters into a transaction with a creditor who has solicited or advertised in this state by any means, including but not limited to mail, brochure, telephone, print, radio, television, internet, or any other electronic means.

Code § 5-1-201(1)(b).

Here, it is undisputed that Defendants operate a website and engage in television advertising in this state, thereby soliciting and advertising their lending business in Colorado. It is further, undisputed that Defendants have entered into loan agreements with Colorado residents.

Accordingly, because Defendants' business activities are conducted off-reservation and because Defendants solicit and advertise their business in Colorado and have, in fact, entered into loan agreements with Colorado citizens, Defendants are not entitled to tribal immunity or federal preemption. Rather, based on the undisputed facts before the Court, the Court concludes that Defendants are subject to the Code's previsions and are thereby liable for any violation thereof. Specifically, because Western Sky is not, and has never been, licensed as a supervised lender, and because unlicensed lenders are not authorized to charge a finance charge on

12

supervised loans, Defendants' liability for restitution to consumers of all finance charges, including penalties, on all unlicensed loans made or collected with respect to Colorado citizens, is established as a matter of law.

### III. The State is entitled to Attorney's Fees incurred in Replying to Defendants' Tribal Immunity and Preemption Arguments in their Response.

The State requests that this Court grant its request for Attorney's fees pursuant to C.R.S. § 13-17-101, *et seq.*, for fees incurred in replying to Defendants' tribal immunity and federal preemption arguments, raised in their Response. C.R.S. § 13-17-102 provides, in pertinent part, that a court may award reasonable attorney fees against a party who brings an action "that lacks substantial justification." *See* C.R.S. § 13-17-102(2). Under this statute, the term "lacks substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. C.R.S. § 13-17-102(4).

Here, as discussed above, the crux of Defendants' argument is that they are entitled to tribal immunity and federal preemption because their business activities are conducted on the Reservation. This very argument has been raised twice previously by these Defendants, and was rejected in each instance. Defendants first raised this argument in *Suthers*, 845 F.Supp.2d at 1182, where the federal court determined that "[D]efendants' repeated argument that [this] case involves regulation of Indian Affairs on an Indian Reservation" so lacked an "objectively reasonable basis" as to entitle the State to its costs and attorney's fees. *Id.* Defendants raised this same argument in the present litigation in their Motion to Dismiss. This argument was again rejected by this Court in its April 17, 2012 Order, denying Defendants' Motion to Dismiss. In their Response to the State's Motion for Summary Judgment, Defendants now raise this same argument for a third time, seemingly undeterred by the federal court's ruling in *Suthers*, as well

13

as this Court's prior ruling here. While Defendants purportedly provide additional facts concerning the details of their loan making process in support of their tribal immunity and preemption arguments, a review of the additional information provided by Defendants leads the Court to no contrary conclusion. Rather, these additional materials confirm what this Court, along with the *Suthers* court, already determined – that Defendants' actions in offering and entering into loans with Colorado consumers, via the Internet, does not constitute on-reservation business activity.

Defendants' continued assertions that they are entitled to tribal immunity and federal preemption, which have been repeatedly rejected by this Court and the Federal Courts, evince stubbornly litigious and substantially vexatious defense of this action and warrant and assessment of attorney's fees. *Mitchell v. Ryder*, 104 P.3d 316, 320-21 (Colo. App. 2004). Where, as the Court has found here, an attorney or party has brought or defended an action, or any part thereof, which lacked substantial justification, the Court shall assess attorney's fees. C.R.S. § 13-17-102(4). Any such award is properly entered in favor of the State and against Defendants and their counsel, jointly and severally. C.R.S. § 13-17-102(3).

Accordingly, because Defendants tribal immunity and federal preemption arguments lack substantial justification, the State is entitled to recover its attorney's fees expended in replying to Defendants Response insofar as the State can establish the reasonable fees incurred in addressing Defendants' tribal immunity and preemption arguments.

## CONCLUSION

WHERFORE, in light of the reasoning stated above, the State's Motion for Partial Summary Judgment – Second Claim for Relief is hereby GRANTED. It is further ordered that,

14

in light of the voluminous unlicensed loans extended by Defendants in violation of the Code, estimated at over 4,000, the State's request that a special master be appointed to determine the number of, and extent to which, consumers have been adversely affected by Defendants' unlawful activity in this matter is GRANTED. The Parties shall submit a joint list of three potential Special Masters, not later than 14 days from the date of entry of this Order, and the Court will select one from that list. If the parties cannot agree on a list of potential Special Masters, the Court will appoint someone of the Court's choosing. Further, in accordance with the Court's findings herein, the State shall file an Affidavit of Attorney's fees incurred in replying to Defendants' tribal immunity and federal preemption arguments in their Response, not later than 14 days from the date of entry of this Order.

DONE this 15th day of April, 2012.

BY THE COURT:

_____
MICHAEL A. MARTINEZ
District Court Judge