UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNAFER KEMPH, DAN DEHMLOW, and GLENN ALLHOFF, for themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 13 CV 6785 |
| v. | ) ) ) | Hon. Marvin E. Aspen |
| JOHN PAUL REDDAM, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

This action arises out of three allegedly usurious loans issued to Plaintiffs by non-party lender Western Sky Financial, Inc. ("Western Sky"). Currently before us is Defendants' motion to compel arbitration, or in the alternative, to dismiss the complaint. In addition to the opening memorandum, response, and reply, Plaintiffs filed a sur-reply and both parties filed additional supporting authority. After reviewing all the submitted materials and relevant precedent, we grant Defendants' motion to compel arbitration and deny Defendants' motion to dismiss as moot.

## BACKGROUND

Illinois residents Jennafer Kemph, Dan Dehmlow and Glenn Allhoff (collectively "Plaintiffs"), brought this action on behalf of themselves and others similarly situated,[1] against Cashcall, Inc. ("Cashcall"), its subsidiaries WS Financial, LLC ("Financial") and WS Funding, LLC ("Funding"), and its president and CEO John Paul Reddam ("Reddam"), as well as Delbert

---

[1] Plaintiffs filed a motion for class certification on the same day that they filed their complaint. (Dkt. 5.) They later moved to withdraw that motion with leave to re-file after the Court's resolution of Defendants' motion to dismiss, which we granted without prejudice. (Dkt. 20.)

1

Services Corporation ("Delbert") and four of its directors and officers, Cesar Guzman, Sunshine Thayer, Greg Dalton, and Melissa Dalton, (collectively "Defendants"). None of the Defendants are residents of Illinois.

Between 2012 and 2013, Plaintiffs each borrowed between $1,000 and $5,075 from Western Sky through internet loans carrying interest rates ranging from 116% to 232%. (Compl. ¶¶ 48, 52, 56.) Western Sky is charted under South Dakota law, located on the Cheyenne River Sioux Tribe ("CRST") Reservation, and controlled by a CRST member, Martin A. Webb. (Resp. at 4.) The loan agreements describe Western Sky as a "lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America." (Mem., Ex. B, Western Sky Consumer Loan Agreement ("Agreement") at 1.)[2]

The agreements, which are form contracts, also purport to be "subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe," and provide that the Cheyenne River Sioux Tribal Court has "sole subject matter and personal jurisdiction" over the borrowers. (*Id.*) At the same time, the contracts state that any "Dispute" under the contract must be resolved through arbitration. (*Id.* at 4.) Disputes are defined to include "any issue concerning the validity, enforceability, or scope of th[e] loan or the Arbitration agreement." (*Id.*) Although the agreements state that arbitration shall be "conducted by the Cheyenne River Sioux Tribal Nation," the borrower has the right to select an independent arbitration organization to "administer the arbitration" under that "organization's rules and procedures applicable to

---

[2] Plaintiffs each executed separate loan agreements with Western Sky. (*See* Mem., Ex. B–D.) The parties appear to agree that for the purposes of Defendants' motions, the three agreements are substantively identical. Consistent with Defendants' practice, we will only cite to Kemph's agreement, (Exhibit B), but our rulings apply equally to Dehmlow's and Allhoff's agreements, (Exhibit C and Exhibit D, respectively.)

2

consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate." (*Id.*) The contracts specifically identify two arbitration organizations as potential options: Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA"). (*Id.*) The agreements also contain a class action and class arbitration waiver. (*Id.* at 2–3.)

The loans were executed between Plaintiffs and Western Sky, but according to the complaint they were entirely funded, controlled, and serviced by Defendants, who merely used Western Sky as a front to evade state law. (Compl. ¶¶ 26, 32, 38–39, 41.) Plaintiffs allege that Defendants' scheme worked as follows: Western Sky marketed and sold high-interest loans to Illinois residents, including Plaintiffs, through their website, and television and radio advertising. (*Id.* ¶¶ 25, 48, 52, 56.) Cashcall, Funding, and Financial funded the loans entirely, and, immediately after origination, Western Sky transferred them to Financial or Funding. (*Id.* ¶¶ 32, 49, 53, 57.) Cashcall and/or Delbert then serviced the loans and collected payments. (*Id.* ¶¶ 32, 49, 51, 54–55, 58.)

In their complaint, Plaintiffs allege that the loans are illegal under Illinois' criminal and civil laws, and that the agreements are unenforceable. (Compl. ¶¶ 29, 70.) Specifically, Plaintiffs explain that in Illinois unlicensed lenders cannot issue loans with annual interest rates higher than 9% under the Illinois Interest Act, 815 ILCS 205/4(1), and higher than 20% under the Illinois Criminal Code, 720 ILCS 5/17-59. (*See* Resp. at 10–11.) Since Western Sky and Defendants are not licensed lenders under the Illinois Consumer Installment Loan Act ("CILA") and Plaintiffs' loans well exceed 20% annual interest, Plaintiffs contend that the loans violate these state laws (Count I) and the Federal Racketeer Influenced and Corrupt Organizations Act

("RICO") (Count IV). Further, they allege that because the loan agreements violate Illinois law, they are null and void under CILA (Count II). Finally, they claim that Defendants' lending scheme constitutes unfair and deceptive acts and practices under the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") (Count III). In part because the agreements purport to be fully performed within the exterior boundaries of the CRST Reservation and subject solely to tribal law, Defendants dispute these allegations and contend that they are not subject to any state law. (Mem. at 16–18, 21.) Neither Plaintiffs nor Defendants, however, have any tribal affiliation themselves. (Resp. at 1, 5.)

Defendants seek to compel arbitration under both the Federal Arbitration Act ("FAA") and the terms of the Plaintiffs' loan agreements. In the alternative, they move to dismiss the case for: (1) improper venue; (2) lack of personal jurisdiction; and (3) failure to state a claim.

## ANALYSIS

The FAA applies broadly to questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, No. 13 C 06485, 2014 WL 2795827, at *2 (N.D. Ill. June 17, 2014). Since Plaintiffs' loan agreements involve interstate commerce, they fall within the scope of the FAA.[3]

---

[3] Plaintiffs' argument that the FAA does not apply because the contract purports to be unbound by federal law ignores the broad scope of the FAA. (*See* Resp. at 9.) First, generic choice-of-law provisions do not preempt FAA applicability. *Wal-Mart Stores*, 2014 WL 2795827, at *3; *BEM I, L.L.C. v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *6 (N.D. Ill. Dec. 15, 2000) *aff'd*, 301 F.3d 548 (7th Cir. 2002); *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64, 115 S. Ct. 1212, 1219 (1995). In this case, the contract's general choice-of-law provision states that federal law does not apply, but the arbitration agreement does not. Second, even when parties expressly agree to conduct arbitration pursuant to non-FAA rules and procedures, they cannot contract to undermine the powerful FAA policies favoring the resolution of disputes through arbitration. *Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 549 (7th Cir. 2008), *abrogated in part on other grounds in Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011); *see Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 523 (6th Cir. 2012); *Ario v. Underwriting Members of*

9 U.S.C. § 2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 2040 (2003). Consistent with the "liberal federal policy favoring arbitration," Sections 3 and 4 of the FAA mandate courts to stay judicial proceedings and compel arbitration when issues in the complaint fall within the scope of the parties' arbitration agreement. 9 U.S.C. §§ 3–4; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Where one party seeks to compel arbitration, the court should resolve substantive issues only after determining that the arbitration agreement is unenforceable or inapplicable. *See Wal-Mart Stores*, 2014 WL 2795827 at *2 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002)). We address Defendants' motion to compel first and find that the parties' arbitration agreement is enforceable. Since Plaintiffs' claims must be resolved through binding arbitration, Defendants' motion to dismiss is denied as moot.

## I. Motion to Compel Arbitration

Defendants move to compel arbitration, arguing that the issues in Plaintiffs' complaint fall under the mandatory arbitration provisions in the loan agreements between Plaintiffs and Western Sky. (Mem. at 5–6.) Plaintiffs do not contend that their claims fall outside the scope of arbitration, but instead claim that the disputes are properly before this Court because the entire forum selection clause (*i.e.*, arbitration clause) is unenforceable. (Resp. at 8.) They explain that the choice-of-law provision, which requires application of tribal law, is unenforceable because it violates Illinois public policy by depriving borrowers of their rights under Illinois law. (*Id.* at 10–12.) Moreover, Plaintiffs contend that the agreements require the arbitrator to apply the contracts' illegal choice-of-law clause, and therefore all legitimate arbitral organizations like

---

*Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288 (3d Cir. 2010). Since Plaintiffs challenge the propriety of arbitration as a whole—rather than attacking individual rules under which the arbitration should be governed—the FAA's policies are controlling despite any contractual agreement otherwise. *See Ario*, 618 F.3d at 288.

5

AAA and JAMS would refuse the dispute. (*Id.* at 13–14.) Since no fair and unbiased organization would handle the dispute, the parties would be forced to arbitrate through CRST, which the Seventh Circuit has determined is an illusory forum. (*Id.* at 13.) This result is procedurally and substantively unconscionable, Plaintiffs argue, for two main reasons: CRST would enforce an illegal choice-of-law provision that violates Illinois public policy, and CRST is a non-existent forum that does not have any mechanisms or rules for conducting a fair and unbiased arbitration. (*Id.* at 13–14.) They also argue that the class arbitration waiver is unenforceable and inseparable from the rest of the arbitration agreement. (*Id.* at 15–16.)

Defendants reply that AAA and JAMS are available forums, and that, in any event, the parties' agreement delegates threshold issues of enforceability to the arbitrator. (Reply at 1–2.) As to the class action waiver, they argue that the Supreme Court has consistently enforced similar class arbitration waivers. (*Id.* at 5–6.)

The party opposing arbitration, in this case Plaintiffs, bears the burden to demonstrate that the arbitration agreement is unenforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000); *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1000 (N.D. Ill. 2013).

A. **Delegation of Arbitrability**

As a threshold matter, Defendants argue that the loan agreements give authority to the arbitrator, not the court, to decide any gateway challenges to the validity or enforceability of the arbitration agreement. (Mem. at 7; Reply at 2.) Notably, Plaintiffs have not made any attempt to respond to this argument, which in this case is sufficient ground for us to grant Defendants' motion. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 467 (7th Cir. 2010) (finding plaintiff's failure to respond to defendants' argument "leaves us no choice but to accept [defendant's] assertions—

6

supported as they are by pertinent legal authority"); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (finding that failure to respond to a non-frivolous and dispositive argument indicates acquiescence to the argument and operates as a waiver); *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 963 F. Supp. 2d 842, 848 (N.D. Ill. 2013) (failure to respond to an argument regarding the scope of arbitration operated as a forfeiture of any argument to compel arbitration); *MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, No. 2 C 4394, 2006 WL 3542332, at *3 (N.D. Ill. Dec. 6, 2006) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."). Even if Plaintiffs had responded, however, we agree with Defendants that the arbitrator should decide questions of arbitrability in this case.

Threshold issues of arbitrability, such as the scope of the arbitration clause and enforceability, are typically decided by the court. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 2855 (2010); *Howsam*, 537 U.S. at 84, 123 S. Ct. at 592 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986) (holding that whether the parties agreed to arbitration is "undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provided otherwise"). Notwithstanding, the Supreme Court has held that "parties can agree to arbitrate 'gateway' questions of arbitrability," including whether the arbitration agreement is unconscionable. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777 (2010). When one party challenges a provision that potentially delegates the question of arbitrability to the arbitrator, the typical presumption in favor of arbitration is reversed. *Rent–A–Center*, 561 U.S. at 79, 130 S. Ct. at 2783 (Stevens, J., dissenting); *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45, 115 S. Ct. 1920, 1924–25 (1995); *Bayer v. Comcast Cable Commc'ns, LLC*, No. 12 C 8618, 2013 WL 1849519, at *2 (N.D. Ill. May 1, 2013). The court may find that the parties agreed to delegate the issue of arbitrability to the arbitrator only if there is "clear and unmistakable evidence" of that agreement. *Bayer*, 2013 WL 1849519, at *2 (citing *First Options*, 514 U.S. at 944, 115 S. Ct. at 1924).

Once it is clear that the parties agreed to delegate arbitrability to the arbitrator, the party opposing arbitration must specifically challenge the delegation provision, instead of merely contesting the contract as a whole. *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779. If the opposing party fails to challenge the delegation directly, then the court must enforce the provision and leave the question of validity to the arbitrator. *Id.*; *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012) (finding party waived argument that delegation provision was unconscionable by not specifically challenging it before the district court); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (finding plaintiff waived argument that delegation provision was unconscionable by not raising it at all); *Van Buren v. Pro Se Planning, Inc.*, No. 14 C 2099, 2014 WL 6485653, at *5 (E.D. La. Nov. 18, 2014) (holding court must enforce delegation provision where the party opposing arbitration did not specifically challenge it); *Chen v. Dillard's Inc.*, No. 12 C 2366, 2012 WL 4127958, at *3 (D. Kan. Sept. 19, 2012) (same).

The Plaintiffs' loan agreement provides that "any dispute . . . under this loan agreement will be resolved by binding arbitration." (Agreement at 3.) It further defines "dispute" as "including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement." (*Id.* at 4.) Courts in this district and elsewhere have found that similar language clearly evidences the parties' agreement to delegate gateway issues to the arbitrator.

8

*See, e.g.*, *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014); *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1293 (11th Cir. 2014); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 12 C 5797, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014); *Bayer*, 2013 WL 1849519, at *3; *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 860 (E.D. Mich. 2011) *aff'd*, 531 F. App'x 713 (6th Cir. 2013); *Thornton v. First Nat. Bank Credit Card*, No. 12 C 492, 2012 WL 4356280, at *3 (S.D. W. Va. Sept. 24, 2012). We agree and find that Plaintiffs' loan agreements clearly and unmistakably delegate gateway questions of arbitrability to the arbitrator.

Since the loan agreements clearly leave questions of validity and enforceability to the arbitrator, in order for us to hear those issues, Plaintiffs must specifically contest that delegation. *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779. But instead, Plaintiffs' challenges target the entire arbitration agreement, and in some respect the entire loan agreement. For example, Plaintiffs' contentions that the contracts are against public policy and illegal under Illinois' civil and criminal laws against usury challenge the legality of the loan agreements in their entirety. In other words, these arguments exist separate and apart from any challenges to the arbitration agreement. Their arguments that the arbitration agreements are procedurally and substantively unconscionable fair no better. Plaintiffs' challenges to the choice-of-law and choice-of-forum provisions seek rejection of "the arbitration clause in its entirety," and they do not mention the delegation provision anywhere in any of their briefing—even in response to Defendants' arguments. (Resp. at 10.) *See Rent-A-Center*, 561 U.S. at 72–73, 130 S. Ct. at 2779–80 (finding defendant's unconscionability arguments did not specifically challenge the delegation provision where they were directed at the "entire agreement" and did not mention delegation); *see also Bayer*, 2013 WL 1849519, at *4 (deferring issues of enforceability to the arbitrator where the

9

plaintiffs' unconscionability challenges were not specific to delegation); *Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1179 (S.D. Cal. 2012) (same). Since Plaintiffs have not challenged the delegation provision specifically, the arbitrator must resolve their arguments regarding the validity and enforceability of the arbitration agreements.[4]

Despite our holding above, unique aspects of this case—namely the implied challenge that the specified arbitral forum does not exist—require some initial analysis from the Court.

### B. Availability of Arbitral Forum

Although the parties delegated gateway issues of arbitrability to the arbitrator, if the chosen arbitral forum does not exist or is unavailable, then the delegation provision would be impossible to enforce. Plaintiffs did not directly challenge delegation, but they did argue that the designated forums are unavailable by contending that AAA and JAMS would refuse the dispute and that the CRST forum is illusory. Thus, we find it necessary to briefly address this argument before compelling arbitration.

Plaintiffs argue that this case is similar to *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014), a case arising out of the same lending scheme and involving comparable loan agreements. The arbitration agreements in *Jackson* required that arbitration of the parties' disputes be conducted by the CRST, on Reservation land, in accordance with CRST rules on consumer disputes. 764 F.3d at 776. The Seventh Circuit ordered a limited remand for the district court to determine whether the specified arbitrator and method of arbitration was actually available. *Id.* at 770. The district court found that no such forum existed because the CRST had

---

[4] We recognize that Eastern District of Wisconsin Magistrate Judge William Duffin recently decided differently in *Williams v. CashCall, Inc.*, No. 14 C 90, Dkt. 36 at 4–6 (E.D. Wis. Mar. 17, 2015). Judge Duffin found the plaintiff in *Williams* sufficiently challenged the delegation provision because he attacked only the specific provision that required arbitration, instead of the entire loan agreement. We find that the facts of this case and the parties' arguments compel a different outcome here.

no experience with arbitration, did not have any trained or experienced arbitrators, did not have any consumer dispute rules, and did not even authorize arbitration under its laws. *Id.* at 770, 776. Based on those findings, the Seventh Circuit held that the specified arbitration mechanism was nonexistent and any prospect of a fairly conducted arbitration under the terms of the agreement was a "sham and an illusion." *Id.* at 776–79. Accordingly, the arbitration agreement was unreasonable and unconscionable under tribal, federal, and state law. *Id.*

Defendants argue persuasively that since Plaintiffs' loan agreements permit arbitration to be administered by a third party such as AAA or JAMS pursuant to that organization's consumer dispute rules, the concerns in *Jackson* are inapplicable. (Mem. at 7; Reply at 1–2, 4.) AAA and JAMS are experienced arbitral forums with robust and readily accessible dispute procedures, and, to our knowledge, they are independent from any of the parties. Unlike in *Jackson*, where there was "no prospect of a meaningful and fairly conducted arbitration," the loan agreements here provide the possibility for an unbiased and fair dispute resolution process. *See Hayes*, 2015 WL 269483, at *3–4 (finding the borrower's ability to select AAA or JAMS as arbitration administer "saves the arbitration agreement from meeting the same fate as . . . *Jackson*"); *Chitoff v. CashCall, Inc.*, No. 14 C 60292, 2014 WL 6603987 (S.D. Fla. Nov. 17, 2014) (compelling arbitration where the plaintiff failed to prove the arbitration forum was unavailable, in part because the agreement allowed AAA or JAMS to conduct the arbitration); *contra Parnell v. Western Sky Fin., LLC*, 14 C 24, Dkt. 25 at 76–77 (N.D. Ga. Apr. 28, 2014).

Plaintiffs' argument that the loan agreements are unconscionable because JAMS and AAA would never agree to preside over the arbitration is speculative and unconvincing. (*See* Resp. at 2–3, 13–14; Sur-Reply at 1–3.) Although the arbitration agreements provide that "the arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation," (Agreement

11

at 5), the arbitrator, once chosen, would have the authority to determine whether that choice-of-law provision is valid. *See Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (holding that once the court determines the validity of the arbitration provision, the remainder of the contract is left for the arbitrator to decide); *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541, 115 S. Ct. 2322, 2330 (1995) (ruling that the arbitrator should decide choice-of-law in the first instance); *CNA Reinsurance Co. v. Trustmark Ins. Co.*, No. 01 C 1652, 2001 WL 648948, at *6 (N.D. Ill. June 5, 2001); *see also Prostyakov v. Masco Corp.*, 513 F.3d 716, 725 (7th Cir. 2008) (upholding the arbitrator's interpretation of the choice-of-law clause because it was not the court's "place to determine whether [the arbitrator's] interpretation was correct as a matter of law"). This is particularly true because, as discussed, the loan agreements explicitly provide that the arbitrator can decide "any issue concerning the validity, enforceability, or scope of . . . the Arbitration agreement," which includes the enforceability of the choice-of-law clause. (Agreement at 4.) Therefore, potential arbitrators need not refuse the dispute in order to comply with internal due process standards. Nor would they be required to violate Illinois public policy by applying tribal law if they chose to accept it. They could instead accept the dispute, find the choice-of-law provision is unenforceable, and determine what default law should apply.

Plaintiffs' argument is further diminished by the fact that AAA has already agreed to administer arbitration in *Chitoff v. CashCall Inc.*, which is based on a nearly identical loan agreement. Plaintiffs attempt to distinguish *Chitoff* by pointing out that the case did not deal with alleged violations of Illinois public policy. (Sur-Reply at 2–3.) The *Chitoff* plaintiffs did, however, argue that the agreements contravened Florida's public policy, and AAA nonetheless agreed to handle the arbitration. *Chitoff*, No. 14 C 60292, Pl. Resp. Br. at 4–6, 25, Dkt. 63-1

(S.D. Fla. Sept. 4, 2014). We see no reason why the outcome should be any different here. (*See also* Def's Mot. to Submit Additional Evidence, Dkt. 83 (attaching JAMS Notice of Intent to Initiate Arbitration in *Keehn v. CashCall, Inc.*).) In any event, we are unwilling to find at this stage, before seeing any evidence that the parties have even approached JAMS or AAA about conducting this arbitration, that there is no chance either organization would handle the dispute.

Since Plaintiffs have not shown that the specified forum is unavailable or illusory, we must enforce the delegation provision and compel arbitration of Plaintiffs' claims and gateway issues of arbitrability.[5]

### C. Class Arbitration Waiver

Plaintiffs also argue that the agreements' waivers of class arbitration are unenforceable because pursuing individual cases would be inefficient and inadequate to remedy Defendants' misconduct. (Resp. at 15–16.) Under the broad delegation provision, this argument would generally be left to the arbitrator; however, the loan agreements expressly exempt challenges to the class action waiver from the arbitrator's otherwise broad delegation of authority and assign the issue to the tribal courts. "The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the [CRST] Nation, and not by the arbitrator." (Agreement at 3–4.) While it is clear that the arbitrator does not have authority to resolve this issue, we must also determine whether our jurisdiction is preempted by the delegation to tribal authority. In *Jackson*, the Seventh Circuit found a comparable forum-selection clause delegating jurisdiction to CRST courts was unenforceable. *Jackson*, 764 F.3d at 781–83. The court explained that tribal courts,

---

[5] Since we are compelling arbitration in light of the delegation provision, we do not need to consider Defendants' other arguments in support of enforcing the arbitration agreement, such as FAA preemption of state law defenses. (*See* Mem. at 6.) These arguments, and Plaintiffs' preceding objections to enforceability, may be addressed by the arbitrator if raised.

13

which are courts of limited jurisdiction, did not have authority over the dispute because plaintiffs had not engaged in any activities on the CRST reservation. *Id.* at 782. In addition, plaintiffs' purported consent to tribal jurisdiction went to personal jurisdiction, not subject matter jurisdiction, and the latter still limited the tribal court's authority. *Id.* at 783. These holdings from *Jackson* are directly applicable and binding on our decision. Since neither the arbitrator nor the tribal courts have authority to resolve Plaintiffs' class waiver objection, we may decide it now.

The Supreme Court has repeatedly found that contractual waivers of the right to participate in class arbitration are enforceable. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013) (enforcing class arbitration waiver); *Concepcion*, 131 S. Ct. at 1753 (finding the FAA preempts California law holding class arbitration waivers unconscionable); *see also Hayes v. Delbert Servs. Corp.*, No. 14 C 258, 2015 WL 269483, at *4 (E.D. Va. Jan. 31, 2015) (enforcing the class arbitration waiver in a substantially similar loan agreement). Plaintiffs argue that these cases are not controlling because they rely on the FAA policies favoring arbitration, which does not apply here according to the loan agreements' choice-of-law provisions. As discussed previously, however, the parties cannot contractually opt out of these important FAA policies. *See infra* n.3; *Edstrom Indus.*, 516 F.3d at 549. Accordingly, the class action and class arbitration waivers in the Plaintiffs' loan agreements are enforceable.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted and Defendants' motion to dismiss is denied as moot.  The case is dismissed without prejudice pending arbitration.

                                                          Marvin E. Aspen
                                                          United States District Judge

Dated: March 27, 2015
         Chicago, Illinois